UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

GAIL N. GOWER,                    )
                                 )
        *Plaintiff*,             )
                                 )   Case No. 4:05-cv-104
v.                               )
                                 )   Judge Mattice
GRUNDY COUNTY, TENNESSEE and     )
SHERIFF ROBERT MEEKS,            )
                                 )
        *Defendants*.            )

*-and-*

GAIL N. GOWER,                    )
                                 )
        *Plaintiff*,             )
                                 )   Case No. 4:06-cv-32
v.                               )
                                 )   Judge Mattice
GRUNDY COUNTY, TENNESSEE and     )
SHERIFF BRENT MYERS,             )
                                 )
        *Defendants*.            )

## MEMORANDUM AND ORDER

Plaintiff Gail N. Gower brings two actions in this Court, which have been

consolidated. The Defendants in those actions are Grundy County, Tennessee Sheriff

Robert Meeks, and Sheriff Brent Myers. Plaintiff alleges the following causes of action

against such Defendants: gender discrimination in violation of 42 U.S.C. § 1983, Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, and the Tennessee

Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq.*; retaliation in violation

of Title VII and the THRA; age discrimination in violation of the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the THRA; common law retaliatory

discharge in violation of Tennessee state law; and violation of the Occupational Safety and Health Act of 1972 ("OSHA"), Tenn. Code Ann. § 50-2-101, *et seq.*

Before the Court is the Motion for Summary Judgment by Defendants Grundy County, Tennessee, Sheriff Robert Meeks, and Sheriff Brent Myers. For the reasons explained below, the Motion for Summary Judgment shall be **GRANTED**.

## I.    STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or by simply " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. To refute such a showing, the nonmoving party may not simply rest on its

pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    FACTS

### A.    Affidavit of Barry Dooley

Defendants contend that certain portions of the affidavit of Barry Dooley should not be considered by the Court because they contain hearsay. Further, Defendants contend that the affidavit, in its entirety, should not be considered because its contents are irrelevant and prejudicial.

Federal Rule of Civil Procedure 56(e) provides, in pertinent part, that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is

competent to testify to the matters stated therein." Pursuant to Federal Rule of Evidence 802, hearsay evidence generally is not admissible in evidence. Thus, "[i]t is well-established in this circuit that otherwise inadmissible hearsay evidence may not be used to support or oppose a motion for summary judgment." *Lucas v. Chance*, 121 F. App'x 77, 79 (6th Cir. 2005). Pursuant to Federal Rule of Evidence 801, hearsay is an out-of-court statement that is offered into evidence to prove the truth of the matter asserted.

Defendants object to paragraphs 4 and 6 of Dooley's affidavit on the basis that they contain inadmissible hearsay. Paragraph 4 of the affidavit reads as follows: "Detective Womack subsequently told me that in fact he had caught Mr. Knost stealing gas on video." Paragraph 6 reads as follows: "Mr. Knost was shown the video, and was advised by the Sheriff that he was caught by Officer Womack on this video." Plaintiff responds by conceding that these statements may be hearsay, but arguing that Mr. Dooley's presence at the meeting with Sheriff Meeks, Detective Womack, and Mr. Knost and his personal observations of what occurred at such meeting verify the veracity of the statements.

There is no question that paragraphs 4 and 6 contain out-of-court statements made by Detective Womack and Sheriff Meeks and that these statements are being offered by Plaintiff to prove the truth of the matters asserted in those statements. Further, Plaintiff's contention that Mr. Dooley's presence at the meeting verifies the veracity of the statements is insufficient to escape this conclusion. For the purpose of their consideration with respect to Plaintiff's opposition to Defendants' motion, however, the Court finds that these statements are non-hearsay under Federal Rule of Evidence 801(d)(2), which relates to party-opponent admissions.

The statement by Detective Womack in paragraph 4 is non-hearsay pursuant to Rule 801(d)(2)(D), which excepts from the definition of hearsay "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." It is evident from the remainder of the affidavit that Sheriff Meeks appointed Detective Womack to investigate Mr. Knost, and the statement by him recited in paragraph 4 relates to the investigation and was made to Mr. Dooley, who was at the time the Chief Deputy of the Grundy County Sheriff's Department. Thus, the Court concludes that such statement concerned a matter within the scope of Detective Womack's employment, and it was made during the existence of his relationship with Grundy County.

The statement by Sheriff Meeks in paragraph 6 is also non-hearsay, pursuant to either Rule 801(d)(2)(D), as quoted above, or Rule 801(d)(2)(A), which excepts from the definition of hearsay "the party's own statement, in either an individual or a representative capacity." Sheriff Meeks is named as a defendant to his suit, so he is a party to this case. Further, it is evident that, as Sheriff of Grundy County, he is an agent of Grundy County, and this statement was made in the course of his relationship with Grundy County and concerned a matter within the scope of his agency.

Accordingly, because the Court finds that, for the purpose of their consideration with respect to Defendants' motion, the statements in paragraphs 4 and 6 of Mr. Dooley's affidavit are not hearsay, the Court will consider such statements, provided they are not excluded pursuant to Defendants' other arguments.

Defendants next argue that Mr. Dooley's affidavit is irrelevant, *see* Fed. R. Evid. 401, 402, and that, even if relevant, its probative value is substantially outweighed by the

prejudicial effect of the testimony therein, *see* Fed. R. Evid. 403. Plaintiff contends that Mr. Dooley's affidavit is, in fact, relevant to the determination of whether men and women were treated disparately by Sheriff Meeks, which is at the heart of her gender discrimination claims. The Court concludes that Plaintiff is correct: the discipline of men by Sheriff Meeks as compared to the discipline of women by Sheriff Meeks is relevant to Plaintiff's gender discrimination claims.

With respect to the issue of the probative value of Mr. Dooley's affidavit as compared to its prejudicial effect, Defendants contend that the facts in the affidavit regarding the alleged malfeasance of an employee of the Sheriff's Department have very little probative value, but would be highly prejudicial to Defendants. While there may be some question regarding the strength of the probative value of Mr. Dooley's affidavit, the Court is unconvinced that Defendants will suffer any significant prejudice as a result of the admission of Mr. Dooley's statements. Thus, the Court concludes that the danger of unfair prejudice associated with Mr. Dooley's statements does not substantially outweigh the probative value of such statements.

Accordingly, Defendants' Motion to Strike Affidavit of Barry Dooley [Court Doc. No. 35] is **DENIED**, and the Court will consider Mr. Dooley's affidavit in whole.

### B.    Relevant Facts

The relevant facts in the record, viewed in the light most favorable to the nonmoving party, are as follows.

Plaintiff Gail Gower was hired by Grundy County in April 2004 to work as a certified correctional officer, or jailer, at the Grundy County jail. (Court Doc. No. 34-2, Charge of

Discrimination (Mar. 15, 2005).)  Ms. Gower was the only certified jailer working at the Grundy County jail at that time.  (Court Doc. No. 34-2, Dooley Dep. 16.)

During the summer of 2004, Ms. Gower sent a note to then-Sheriff Robert Meeks that expressed her concern about dispensing medication to inmates since she had no medical background or training.  (Court Doc. No. 34-2, Mem. (July 24, 2004).)  She told Sheriff Meeks that she would not continue to dispense medication to inmates unless he gave her a written order to do so.  (Charge of Discrimination.)  On September 22, 2004, Sheriff Meeks directed Ms. Gower in writing to administer medicine to inmates in the Grundy County jail, as directed by the inmates' doctors.  (Court Doc. No. 34-2, Mem. (Sept. 22, 2004); Court Doc. No. 34-2, Jailer's Daily Activity Report (Sept. 22, 2004).)

In late 2004 and early 2005, Ms. Gower complained about alleged discrepancies in the calculation of overtime and holiday pay for dispatchers, jailers, and road officers. (Charge of Discrimination; Court Doc. No. 34-3, Facsimile to Danute Costello (Dec. 14, 2004).)  On January 14, 2005, the Grundy County Commissioners held a meeting during the afternoon and evening regarding this issue, which Sheriff Meeks attended.  (Charge of Discrimination; Court Doc. No. 34-2, Scissom Aff. ¶ 2.)  Ms. Gower was assigned to work at the Grundy County jail from 6:00 p.m. on January 14 to 6:00 a.m. on January 15. (Charge of Discrimination.)  Ms. Gower was the only jailer scheduled to work on the evening of January 14.  (Court Doc. Nos. 29-2, 34-3, , Gower Dep. 51.)

Billy Scissom was serving as the Shift Sergeant on January 14.  (Charge of Discrimination; Scissom Aff. ¶ 2.)  While on duty, Sergeant Scissom and another jail employee, James Caldwell, had attended the meeting prior to 6:00 p.m.  (Charge of Discrimination; Scissom Aff. ¶ 3.)  When Ms. Gower arrived for her shift, Sergeant Scissom

told Ms. Gower that she could leave the jail and go to the meeting and that he and another jail employee, Chris Fults, would remain at the jail until she returned. (Charge of Discrimination; Scissom Aff. ¶¶ 5-6.) Sergeant Scissom also told Ms. Gower that he would send for her immediately if her presence was needed at the jail. (Scissom Aff. ¶ 7.) Sergeant Scissom states that he had the authority to give Ms. Gower permission to leave the jail to attend the meeting. (*Id.* ¶ 8.) No one specifically told Ms. Gower that they were going to perform her job duties as jailer while she was gone to the meeting. (Gower Dep. 60.)

With Sergeant Scissom's permission, Ms. Gower left the jail and attended the meeting, where she informed those present that she had been in contact with a representative of the Federal Wage and Hour Division in Nashville regarding her concerns. (Charge of Discrimination; Facsimile to Danute Costello.) Ms. Gower's comments at the meeting appeared to anger Sheriff Meeks. (Dooley Dep. 49.) Ms. Gower then returned to the jail, after being absent for approximately 30 minutes, and completed her shift. (Charge of Discrimination.)

Ms. Gower next worked on January 19, 2005, and completed a 16-hour shift during which she saw Sheriff Meeks but he did not speak to her. (*Id.*) On January 20, 2005, Ms. Gower received several calls at home from the Sheriff's Department, which she discovered when she checked her caller identification, and she contacted the jail. (*Id.*) When she called the jail, Sheriff Meeks told her that she was being terminated for leaving the jail without permission to attend the meeting on January 14. (*Id.*; Court Doc. No. 29-3, Separate Notice.) Ms. Gower told Sheriff Meeks that she had permission from Sergeant Scissom to leave, but Sheriff Meeks indicated that he did not care. (Charge of

Discrimination.)  Neither Scissom nor Caldwell, who both attended the meeting while on duty, were terminated.  (*Id.*)  Scissom and Caldwell, however, were officers, not jailers, and were not required to remain at the jail—or any other particular place—while performing their duties.  (Gower Dep. 63, 72, 75.)  Sheriff Meeks ultimately filled Ms. Gower's position by hiring Ms. Gower's son Aaron, who did not have certification.  (*Id.* at 76.)

On March 15, 2005, Ms. Gower filed a sworn Charge of Discrimination with the Tennessee Human Rights Commission, alleging gender discrimination and retaliation. (Charge of Discrimination.)  In this charge, Ms. Gower claimed that she was treated disparately because similarly situated male officers received less serious or no disciplinary action even though their violations were more serious.  (*Id.*)  She also claimed that she was retaliated against because she had contacted state and federal agencies concerning alleged unfair and deceptive pay practices.  (*Id.*)  She does not claim that she was retaliated against for her participation in any EEOC actions; in fact, she had not yet participated in any EEOC actions at the time of her termination.  (Gower Dep. 84.)

In support of her disparate treatment claim, Ms. Gower submits the affidavit of Barry Dooley, who was the Chief Deputy for the Grundy County Sheriff's Department at the time of Ms. Gower's employment.  (Court Doc. No. 34-3, Dooley Aff. ¶ 2.)  He states that former Sheriff's Deputy John Knost was caught on video stealing County gasoline for his personal use, that Sheriff Meeks offered Knost the option of resigning in order to avoid being terminated, and that Knost in fact did resign.  (*Id.* ¶¶ 3-4, 6-8.)  Sheriff Meeks gave Knost the videotape evidence of his theft.  (*Id.* ¶ 8.)

Some time thereafter, Sheriff Meeks left office and was replaced in August 2005 by Brent Myers, who is the current Sheriff of Grundy County. (Court Doc. No. 29-4, Myers Aff. ¶ 2.) After Sheriff Myers took office, Ms. Gower contacted him to inquire about any open jailer positions. (*Id.* ¶ 3.) Sheriff Myers told Ms. Gower to fill out an employment application, and said that he would consider her for any positions that might become available. (*Id.* ¶ 4; Second Charge of Discrimination.) He also told Ms. Gower that he did not care what had happened under Sheriff Meeks' administration. (Second Charge of Discrimination; Gower Dep. 113-14.)

On September 1, 2005, Ms. Gower submitted an application for re-employment as a correctional officer with the Grundy County jail. (Court Doc. No. 34-3, Second Charge of Discrimination (Oct. 5, 2005); Gower Dep. 110.) After submitting her application, Ms. Gower found out that Sheriff Myers had said that she failed to submit the correct application: apparently, Ms. Gower filled out an application that was left from Sheriff Meeks' administration, while Sheriff Myers said—and Ms. Gower acknowledges—that she failed to fill out an application from his administration. (Gower Dep. 101, 110-11.)

Sheriff Myers states in his affidavit that he never received an employment application from Ms. Gower and that he attempted, but was unable, to contact her to again ask her to fill out an application. (Myers Aff. ¶¶ 5-6.) Because he never received her application, he says he was unable to hire her for any positions in the Sheriff's Department. (*Id.* ¶ 7.) He further states, as does Ladue Bouldin, Mayor of Grundy County, that no applications for employment were available at the jail prior to and including September 1, 2005. (*Id.* ¶ 8; Court Doc. No. 29-5, Bouldin Aff. ¶¶ 3-6.)

Sheriff Myers hired two younger male officers with no prior corrections experience or certification. (Second Charge of Discrimination; Gower Dep. 112.) When Ms. Gower learned of these hirings, she contacted Sheriff Myers and asked him to review her application, which he agreed to do. (Second Charge of Discrimination.) Thereafter, Sheriff Myers hired another male officer with no prior corrections experience or certification. (*Id.*) After Ms. Gower submitted her application, Sheriff Myers also hired three women to work at the jail, all of whom are younger than Ms. Gower and none of whom had prior corrections experience or certification. (*Id.*; Gower Dep. 110.)

On October 5, 2005, Ms. Gower filed a second Charge of Discrimination, alleging gender and age discrimination and retaliation. (Second Charge of Discrimination.) She claims that the County's failure to hire her was due to her gender and age and was in retaliation for her previous Charge of Discrimination. (*Id.*)

## III. ANALYSIS

Defendants move for the dismissal of Plaintiff's gender discrimination claims under § 1983 and Title VII, Plaintiff's age discrimination claim under the ADEA, and Plaintiff's retaliation claims under Title VII on the merits of those claims and request that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims in the event that all of Plaintiff's federal claims are dismissed.

### A. Defendants Brent Myers and Robert Meeks

At the outset, the Court notes that Plaintiff's claims against Defendants Brent Myers and Robert Meeks are brought against those Defendants in their official capacities as current and former Sheriff of Grundy County, Tennessee, respectively, and not in their

individual capacities. "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). Thus, Plaintiff's claims against Defendants Myers and Meeks in their official capacities are actually claims against Grundy County, Tennessee. Because Grundy County, Tennessee, is named as a Defendant in this action, the naming of Defendants Myers and Meeks is redundant. Accordingly, Plaintiff's claims under federal law against Defendants Myers and Meeks in their official capacities are **DISMISSED WITH PREJUDICE** as redundant in light of Plaintiff's claims against Grundy County.

Plaintiff's claims under federal law survive against Grundy County, Tennessee, and the Court will address Defendants' Motion for Summary Judgment with respect to those claims.

### B.      Gender Discrimination

Defendants seek the dismissal of Plaintiff's gender discrimination claims under Title VII and § 1983.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The relationship of Title VII to Section 1983 in the context of gender discrimination has been described as follows:

> 42 U.S.C. § 1983 provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law. . . . Individuals have a right, protected by the Equal Protection clause of the Fourteenth Amendment, to be free from discrimination on the basis of sex in public

> employment.  To make out such a claim, a plaintiff must prove that [s]he suffered purposeful or intentional discrimination on the basis of gender.  As this Court has noted several times, the showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under [§ 1983].

*Smith v. City of Salem*, 378 F.3d 566, 576-77 (6th Cir. 2004) (internal quotation marks and citations omitted).  Accordingly, the analysis of Plaintiff's Title VII gender discrimination claims is identical to the analysis of her § 1983 gender discrimination claims.

With respect to Plaintiff's gender discrimination claims, there is no direct evidence of discriminatory intent, so Plaintiff's claims must be analyzed under the familiar *McDonnell Douglas/Burdine* burden-shifting analysis.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1972).  Under this analytical scheme, the burden first falls to Plaintiff to establish a *prima facie* case of discrimination.  *Burdine*, 450 U.S. at 252-53; *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).  If Plaintiff is able to meet her burden of showing a *prima facie* case of gender discrimination, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. *Burdine*, 450 U.S. at 253; *DiCarlo*, 358 F.3d at 414.  If Defendant is able to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination, the burden then shifts back to Plaintiff to produce evidence from which a jury could find that Defendant's stated reason is actually a pretext for discrimination.  *Burdine*, 450 U.S. at 253; *DiCarlo*, 358 F.3d at 414-15.

Plaintiff brings gender discrimination claims with respect to two distinct actions: (1) Sheriff Meeks' termination of her and (2) Sheriff Myers' failure to hire her.  The Court will address the claims related to each action in turn.

First, to establish a *prima facie* case with respect to her claim that Sheriff Meeks discriminated against her on the basis of her gender by terminating her, Plaintiff must show that (1) she was a member of a protected class, (2) she was discharged, (3) she was qualified for the position she held, and (4) she was treated less favorably than a similarly-situated person outside the protected class. *Overley v. Covenant Transport, Inc.*, 178 F. App'x 488, 491 (6th Cir. 2006); *Smith*, 378 F.3d at 570; *see also Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 165 n.12 (6th Cir. 2004). Defendants contend that Plaintiff has not met her burden of proving the fourth element.

With respect to the fourth element, "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered similarly-situated." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709-10 (6th Cir. 2006) (internal quotation marks and citation omitted). Rather, the plaintiff must demonstrate that she is "similarly-situated to the non-protected employee in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998). In the disciplinary context (which is the context of the instant case) in order to be similarly situated, "the plaintiff and [her] proposed comparator must have engaged in acts of *comparable seriousness*." *Wright*, 455 F.3d at 710. To make this assessment, the Court may examine whether the plaintiff and the proposed comparator "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583. Although the foregoing are the factors that are ordinarily relevant considerations in differential

discipline cases, if such factors are not applicable in a particular case, then the court "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovich*, 154 F.3d at 352.

Plaintiff contends that the non-discipline of Sergeant Scissom and Mr. Caldwell, who also attended the County Commission meeting while on duty, is evidence of differential treatment of similarly-situated employees. Defendant argues, however, that these men are not similarly situated to Plaintiff because they were not jailers, but were officers, and pursuant to Ms. Gower's own testimony, they did not leave their posts to attend the meeting, whereas she did.

The Court concludes that Defendant is correct: Sergeant Scissom and Mr. Caldwell are not similarly situated to Plaintiff. Although Plaintiff attempts to minimize the differences between Sergeant Scissom, Mr. Caldwell, and herself, it is apparent that there exist differentiating circumstances that would distinguish the Sheriff's treatment of them. In particular, the evidence in the record demonstrates that Sergeant Scissom and Mr. Caldwell were both serving as officers, while Ms. Gower was serving as a jailer. In fact, Ms. Gower was the only jailer working on the evening of January 14, 2005. Although all three employees were on duty when they attended the meeting, Ms. Gower, as a jailer, had to leave her assigned post, the Grundy County jail, in order to attend the meeting, while Sergeant Scissom and Mr. Caldwell, as officers, were not assigned to a particular post and therefore did not leave their post to attend. Further, Ms. Gower's attendance at the meeting left no certified jailer on duty at the jail, whereas there is no evidence that the attendance of Sergeant Scissom and Mr. Caldwell at the meeting affected the availability

of officers on duty at the time. Thus, the Court concludes that the evidence in the record regarding Sergeant Scissom and Mr. Caldwell does not establish the fourth element of the *prima facie* case of discrimination.

Plaintiff also contends that Mr. Dooley's affidavit establishes that similarly-situated male employees received less serious disciplinary treatment than Ms. Gower. Mr. Dooley's affidavit relates that Mr. Knost, a former Sheriff's deputy, was caught stealing County gas for his personal use, was permitted to resign instead of being terminated, and was allowed to keep the evidence of his theft upon his resignation. As with Sergeant Scissom and Mr. Caldwell, however, the Court concludes that there are differentiating circumstances that would explain the Sheriff's treatment of Mr. Knost as compared to Ms. Gower. Specifically, the disciplinary violations by Mr. Knost and Ms. Gower are not comparable in terms of the type of violation: one involves theft of County property, and the other involves leaving one's post. There also is no evidence in the record that the two types of disciplinary violations are of comparable seriousness, such that they would warrant similar discipline. For example, while theft of County property is clearly inappropriate, it does not necessarily affect the operations of the Sheriff's Department or the jail. In contrast, the evidence in the record demonstrates that Ms. Gower's attendance at the meeting left the jail without a certified jailer. In short, these two instances of discipline are too different to allow the Court to conclude that Mr. Knost and Ms. Gower were similarly situated.

Since Plaintiff has failed to demonstrate that she was treated less favorably than a similarly-situated person outside her protected class, the Court must conclude that Plaintiff has failed to establish a *prima facie* case of gender discrimination under Title VII or § 1983. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to

Plaintiff's Title VII and § 1983 gender discrimination claims against Grundy County related to Sheriff Meeks' termination of her, and such claims are **DISMISSED WITH PREJUDICE**.

Second, to establish a *prima facie* case with respect to her claim that Sheriff Myers discriminated against her on the basis of her gender by failing to hire her, Plaintiff must show that (1) she is a member of a protected class, (2) she applied and was qualified for a job, (3) despite her qualifications, she was rejected, and (4) after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualification and/or other similarly qualified individuals who were not members of the protected class were hired. *McDonnell Douglas*, 411 U.S. at 802; *Birch*, 392 F.3d at 165 n.12; *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004). Defendants assert that Plaintiff cannot meet the second element of the *prima facie* case because she did not submit a proper application. *See Watson v. City of Cleveland*, 202 F. App'x 844, 855 (6th Cir. 2006) (finding that the second element was not met when the plaintiff merely inquired about the particular position, but did not apply for it). In response, Plaintiff asserts that there is a material factual dispute in the record regarding Plaintiff's application that prevents a grant of summary judgment on this issue.

There are indeed disputed facts in the record regarding any application submitted by Plaintiff for employment with the Sheriff's Department, but taking the facts in the light most favorable to Plaintiff, as the Court must do, the record demonstrates that Plaintiff did submit an application to Sheriff Myers. The record also demonstrates, however, that the application submitted by Plaintiff was not the proper application for positions in Sheriff Myers' administration. Although Plaintiff asserts that she did not know at the time that she

had submitted the wrong application, she does not dispute that she, in fact, did submit the wrong application.  Further, the evidence in the record demonstrates that Ms. Gower did not come to the jail or to the mayor's office to request an application during the month of August 2005; rather, she apparently obtained an application from another source.  As a result, this decision turns not on a factual dispute regarding the submission of an application, but on whether, as a matter of law, a plaintiff has applied for a job if she submitted the wrong application.

For the reasons set forth below, the Court concludes that when, as here, there is no evidence that proper applications were withheld from persons in a protected class, the submission of an improper application is not sufficient proof of applying for a particular position.  It is not known in the instant case what differences existed between the version of the application submitted by Plaintiff and the version of the application desired by Sheriff Myers.  In the end, the nature of those differences is immaterial.  While the submission of the wrong application represents something more than merely inquiring about a position, *see Watson*, 202 F. App'x at 855, it is not sufficient to establish that a plaintiff actually applied for a position.

Holding that the submission of an improper application constitutes applying for a job pursuant to Title VII and § 1983 would eviscerate any prerogative employers have to dictate what information their applications require from applicants and would obligate employers to consider applicants who do not submit the required information.  In its worst incarnation, such a holding would permit an applicant to apply for a job by simply submitting a letter saying, "I hereby apply for the position of _____."  The Court is convinced that the better approach to such a factual scenario—and the one most

consistent with the goals of Title VII and § 1983—is that, in the absence of any evidence that proper applications were withheld from members of a protected class, a plaintiff has applied for a job only when he or she submits a proper application.

In this case, as explained above, there is no factual dispute regarding whether Plaintiff submitted the proper application—Plaintiff concedes in her deposition that she did not. As a result, the Court concludes that Plaintiff has not proved that she applied for a position with the Grundy County jail. In the absence of a proper application, Plaintiff has not proved the second element of the *prima facie* case of her failure-to-hire claims. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's Title VII and § 1983 against Grundy County related to Sheriff Myers' failure to hire her, and such claims are **DISMISSED WITH PREJUDICE**.

### C. Age Discrimination

Defendants also seek the dismissal of Plaintiff's age discrimination claim, which is based on Sheriff Myers' failure to hire her.

Defendants first argue that because Plaintiff did not cite to the ADEA in her complaint, but instead cited only to Title VII and § 1983, she did not effectively bring an age discrimination claim pursuant to the ADEA. As explained above, Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin, but not age. *See* 42 U.S.C. § 2000e-2(a)(1). Further, age discrimination claims may not be brought pursuant to § 1983. *Janes v. Bardstown City Sch. Bd. of Educ.*, 97 F.3d 1452, 1996 WL 536794, at *4 (6th Cir. Sept. 20, 1996). The ADEA is the exclusive remedy for age discrimination. *Id.*

It is true that Plaintiff does not cite to the ADEA in her complaint. In addition, although Defendants point out such fault in their motion for summary judgment, Plaintiff does not address such fault in her response to the motion. Nevertheless, because it is clear on the face of Plaintiff's complaint that she is complaining about age discrimination, and because the ADEA is the only federal statute under which a plaintiff complaining about age discrimination may bring a claim, the Court will read Plaintiff's complaint liberally, so as to include an ADEA claim.

As with Plaintiff's Title VII and § 1983 claims, in the absence of direct evidence of discriminatory intent, Plaintiff's ADEA claim must be analyzed under the *McDonnell Douglas/Burdine* burden-shifting analysis described above. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). Under such analysis, the burden first falls to Plaintiff to establish a *prima facie* case of age discrimination under the ADEA. The *prima facie* elements of an ADEA age discrimination case are as follows: (1) the plaintiff was at least forty years old a the time of the alleged discriminatory act; (2) the plaintiff was subject to adverse employment action; (3) the plaintiff was otherwise qualified for the position; and (4) after the plaintiff was rejected, a substantially younger person was hired for the job. *Walcott v. City of Cleveland*, 123 F. App'x 171, 177-78 (6th Cir. 2005). Defendants do not challenge Plaintiff's evidence with respect to the *prima facie* case, and the Court concludes that there is sufficient evidence in the record with respect to all four elements.

As a result, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for Sheriff Myers' failure to hire Plaintiff. Defendants assert that Sheriff Myers did not hire Ms. Gower because she failed to submit an application. As

noted above, the facts in the record, which must be taken in the light most favorable to Plaintiff, demonstrate that Ms. Gower did submit an application, but that she did not submit the proper application. Thus, given the Court's discussion above regarding the necessity to submit a proper application, the Court concludes that Defendants have articulated a legitimate, non-discriminatory reason for Sheriff Myers' failure to hire Plaintiff.

Because Defendants have articulated a legitimate, non-discriminatory reason for the failure to hire Plaintiff, the burden now shifts back to Plaintiff to produce evidence from which a jury could conclude that the reason given by Defendants is a pretext for discrimination. Plaintiff may meet this burden by offering evidence sufficient to establish that Defendants' proffered reason (1) had no basis in fact, (2) did not actually motivate the decision not to hire Plaintiff, or (3) was insufficient to warrant the refusal to hire Plaintiff. *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 576 (6th Cir. 2006); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Although Plaintiff does not argue the existence of pretext in the section of her response related to age discrimination, she does make certain arguments earlier in her brief related to pretext. First, she contends that a factual dispute exists regarding Defendants' proffered reason for not rehiring her, which prohibits a grant of summary judgment. As explained above, although there is a factual dispute in the record regarding whether Plaintiff submitted any application, such dispute does not prohibit the entry of summary judgment because the pertinent issue is not whether Plaintiff submitted any application, but whether she submitted the proper application. Thus, Plaintiff's argument that a factual dispute exists regarding Defendants' proffered reason for not rehiring her is not sufficient to escape summary judgment.

Second, Plaintiff contends that Defendants' proffered reason has no basis in fact. She does not provide any explanation in her brief, or any citation to the record, related to this argument, however, and the Court finds that such argument fails. Despite arguing in her brief that there is no basis in fact for Defendants' reason, Plaintiff already acknowledged in her deposition that she did not turn in the version of the application required by Sheriff Myers. Thus, the only evidence in the record is that the reason offered by Defendants—that Plaintiff failed to submit the proper application—is based in fact.

Plaintiff does not present any other arguments related to pretext. Accordingly, the Court concludes that Plaintiff has not presented sufficient evidence from which a jury could conclude that Defendants' proffered reason for Sheriff Myers' refusal to hire Plaintiff was a pretext for discrimination. In the absence of such evidence, the dismissal of Plaintiff's ADEA claim is proper. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's ADEA age discrimination claim against Grundy County, and such claim is **DISMISSED WITH PREJUDICE**.

### D. Retaliation

Defendants also seek the dismissal of Plaintiff's retaliation claims pursuant to Title VII.[1]

Title VII retaliation claims are also analyzed under the *McDonnell Douglas/Burdine* burden-shifting analysis. *Bacon v. Honda of Am. Mfg., Inc.*, 192 F. App'x 337, 342 (6th Cir. 2006). Thus, the burden first falls to Plaintiff to establish a *prima facie* case of retaliation.

---

[1] In contrast to the joint remedies of Title VII and § 1983 with respect to Plaintiff's gender discrimination claims, Title VII is the exclusive remedy for Plaintiff's retaliation claims. *Woodruff v. Ohman*, 29 F. App'x 337, 343 (6th Cir. 2002); *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984).

The elements of a *prima facie* case of Title VII retaliation are as follows: (1) the plaintiff engaged in a protected activity; (2) the exercise of that protected right was known to the defendant; (3) the defendant thereafter took an employment action adverse to the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) a causal connection existed between the protected activity and the adverse employment action or harassment. *Smith*, 378 F.3d at 570; *Akers v. Alvey*, 338 F.3d 491, 497 (6th Cir. 2003).

Plaintiff brings two retaliation claims. First, Plaintiff alleges that Sheriff Meeks' termination of her was in retaliation for her refusal to dispense medication and her reporting of alleged unfair pay practices. Second, Plaintiff alleges that Sheriff Myers' failure to hire her was in retaliation for her prior complaint of discrimination.

Defendants first seek the dismissal of Plaintiff's retaliation claim related to Sheriff Meeks' termination of Plaintiff on the basis that Plaintiff did not engage in any protected activity under Title VII prior to her termination. Specifically, Defendant asserts that the activities in which Plaintiff engaged that are the basis of her retaliation claim—her refusal to dispense medications to inmates, her reporting of alleged unfair pay practices, and her statements to the Grundy County Commission regarding the Sheriff Department's alleged unfair pay practices—are not protected activities pursuant to Title VII. Plaintiff argues in response that Defendants' definition of protected activity is too restrictive and that such activities are protected under Title VII.

Title VII provides that it is unlawful for an employer to retaliate against an employee because that employee has "opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Put another way, "[u]nder Title VII, an employee is protected against employer retaliation for opposing any practice that the employee reasonably believes to be a violation of Title VII." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).

Plaintiff is correct that many different types of conduct constitute opposition that is protected under Title VII and that the retaliation provision of Title VII applies regardless of whether the challenged practice is ultimately found to be unlawful. *See id.* at 579-81. The critical point, however, is that, in order for the retaliation provision to apply, a plaintiff's conduct must have opposed practices which are made unlawful by Title VII. As discussed above, the employment practice made unlawful by Title VII is discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). In this instance, Plaintiff's complaints about the dispensing of medication and unfair pay practices are wholly unrelated to Title VII. In the absence of any evidence that such complaints related in any way race, color, religion, sex, or national origin, the Court must conclude that no reasonable employee would believe that her complaints about the dispensing of medication and unfair pay practices were complaints about violations of Title VII. Thus, Plaintiff has failed to present sufficient evidence that she engaged in protected activity prior to her termination by Sheriff Meeks. Accordingly, because Plaintiff has failed to present evidence sufficient to establish a *prima facie* case, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's retaliation claim against Grundy County related to Sheriff Meeks' termination of her, and such claim is **DISMISSED WITH PREJUDICE**.

Defendants next seek the dismissal of Plaintiff's retaliation claim related to Sheriff Myers' refusal to hire Plaintiff on the basis that Plaintiff has not sufficiently proved a causal connection between her protected activity and her termination and/or has not sufficiently proved that Defendants had knowledge of her protected activity.  Plaintiff does not address this argument in her response.

While the record likely sufficiently establishes an institutional knowledge within Grundy County of Plaintiff's prior Charge of Discrimination, Defendant is correct that there is no evidence in the record tending to show that Sheriff Myers had any knowledge of Plaintiff's prior Charge when he made the decision not to rehire her.  In the absence of any knowledge on his part of her prior protected activity, there are no facts in the record causally connecting her protected activity with Sheriff Myers' failure to hire her.  Thus, the Court concludes that Plaintiff has not presented sufficient evidence to establish the fourth element of the *prima facie* case, and the dismissal with prejudice of Plaintiff's retaliation claim against Grundy County is proper.

Further, even if the Court were to conclude that Plaintiff had presented sufficient evidence to establish the *prima facie* case, Plaintiff's retaliation claim based on Sheriff Myers' failure to hire her would still be ripe for dismissal.  As explained above, Defendants have presented a legitimate, nondiscriminatory reason for Sheriff Myers' failure to hire Plaintiff, and Plaintiff has not presented sufficient evidence from which a jury could conclude that Defendants' proffered reason for Sheriff Myers' refusal to hire Plaintiff was a pretext for discrimination.

Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's Title VII retaliation claim against Grundy County related to Sheriff Myers' failure to rehire her, and such claim is **DISMISSED WITH PREJUDICE**.

### E.    State Law Claims

Defendants also seek the dismissal of Plaintiff's state law claims on the basis that the Court should decline to exercise supplemental jurisdiction over such claims now that all of Plaintiff's causes of action over which this Court has original jurisdiction have been dismissed.

Section 1367 of Title 28 of the United States Code provides, in pertinent part, as follows: "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c).  Pursuant to § 1367, it is "within the district court's discretion to decline to exercise jurisdiction over [a plaintiff's] state-law claims once it dismisse[s] the federal claims."  *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 853 (6th Cir. 2007).  Moreover, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Robert N. Clemens Trust*, 485 F.3d at 853.

Plaintiff has cited nothing in her brief, and the Court is not aware of anything, which indicates that this case is anything other than the "usual case" in which the relevant factors weigh in favor of declining to exercise supplemental jurisdiction.  Accordingly, Defendants'

Motion for Summary Judgment is **GRANTED** in this regard, and the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants. Such claims are therefore **DISMISSED WITHOUT PREJUDICE**.

## IV.     CONCLUSION

For the reasons explained above, it is **ORDERED** as follows:

- Defendants' Motion to Strike Affidavit of Barry Dooley [Court Doc. No. 35] is **DENIED**.

- Defendants' Motion for Summary Judgment [Court Doc. No. 29] is **GRANTED**.

- All of Plaintiff's causes of action against Defendants Meeks and Myers based on federal law are **DISMISSED WITH PREJUDICE** as redundant.

- Plaintiff's gender discrimination claims pursuant to Title VII and § 1983, age discrimination claim pursuant to the ADEA, and retaliation claims pursuant to Title VII are **DISMISSED WITH PREJUDICE** on the merits as to Defendant Grundy County, Tennessee.

- The Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state law claims, and such claims are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c).

- The Clerk is directed to close the file in this case.

SO ORDERED this 7th day of August, 2007.

_____
_/s/ Harry S. Mattice, Jr._
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE